UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

LISA NEWMAN, MICHAEL NEWMAN,
S.N., E.N., and C.N.,

            Plaintiffs,

      v.                                          Case No. 21-C-945

NAZCR TRAC PROPERTY OWNERS
ASSOCIATION, INC., and KEVIN BURT,

            Defendants.

---

## DECISION AND ORDER GRANTING PLAINTIFFS' MOTION
## FOR PRELIMINARY INJUNCTION

---

      Plaintiffs Lisa Newman, Michael Newman, S.N., E.N., and C.N., brought this action against Defendants Nazcr Trac Property Owners Association, Inc., and Kevin Burt, alleging violations of the Fair Housing Amendments Act (FHAA), 42 U.S.C. § 3601, *et seq.*, arising out of Plaintiffs' desire to build a backyard fence for their autistic children. Plaintiffs allege that Defendants have wrongfully denied their requests to build a backyard fence as a reasonable accommodation under the FHAA. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331. Before the Court is Plaintiffs' motion for preliminary injunction. Dkt. No. 25. For the following reasons, Plaintiffs' motion will be granted.

### BACKGROUND

      Plaintiffs Lisa and Michael Newman own a single-family residence in De Pere, Wisconsin, and reside there with their children, six-year-old S.N., five-year-old E.N., three-year-old C.N., and one-year-old T.N. Compl. ¶ 5, Dkt. No. 1-2. Nazcr Trac, LLC, the developer of the subdivision in which Plaintiffs reside, established by-laws that created Defendant Nazcr Trac Property Owners

Association, Inc. (the Association). *Id.* at ¶ 13; *see also* Dkt. No. 27-3. Defendant Kevin Burt is the President of the Association. Compl. ¶ 12. The by-laws provide that the lots in the subdivision should be "developed . . . in accordance with the restrictive covenants contained herein and in compliance with all building restrictions of record with the City of De Pere." *Id.* The restrictive covenants, filed with the Brown County Register of Deeds, contains a covenant that provides: "No fences of any kind shall be allowed." Dkt. No. 27-2 at 4. Importantly, the by-laws give the Association the power to "enforce any and all covenants, restrictions and agreements applicable to the participatory parties." Dkt. No. 27-3 at 2.

The Newmans purchased their home in the Nazcr Trac subdivision in 2017, prior to any of their children being diagnosed with Autism. Newman Decl. ¶ 4, Dkt. No. 26. Soon after they purchased the home, however, S.N. was diagnosed with Autism. S.N. has significant speech delays, poor social skills, some academic delays, and major issues with elopement. *Id.* at ¶ 5. In 2018, E.N. was diagnosed with Autism. *Id.* at ¶ 6. E.N. is non-verbal, uses an electronic communication device, is approximately two grade-levels behind others her age, attends school half-time, and has significant issues with elopement. *Id.* In 2020, C.N. was also diagnosed with Autism. *Id.* at ¶ 7. C.N. has speech delays and poor social skills, but does not have significant academic delays. *Id.* at ¶ 8. As a result of their diagnoses, S.N., E.N., and C.N. are "unable to understand dangerous situations or monitor their own safety" and "require extra supervision to prevent them from running away." *Id.* at ¶ 10. All three children have run away from the Newmans or other caregivers on multiple occasions despite efforts to closely supervise them. *Id.* at ¶ 12.

In 2019, S.N. and E.N.'s health care providers recommended that the Newmans construct a fence in their backyard for safety reasons. *See* Dkt. Nos. 26-3–26-6. Seeking to do just that, the Newmans emailed Kevin Burt on July 24, 2019, informing Burt that their two eldest children had received disability diagnoses and, as a result, required a fence in the backyard to keep them safe.

Dkt. No. 26-1 at 2. The Newmans acknowledged that a restrictive covenant prevented them from building a fence, but requested that Burt inform them of the necessary steps to get a fence approved. *Id.* Burt responded on August 4, 2019, and told the Newmans that the Association's board would have a meeting that day to discuss the request, but neither Burt nor the Association responded to the request. *Id.* at 1; Compl. ¶ 21. Months later, however, the Newmans were told by a neighbor that the Association had denied their request. Newman Decl. ¶ 19.

The Newmans renewed their efforts on December 27, 2020, this time sending a formal letter to Burt. *See* Dkt. No. 26-2. The letter requested that the Association allow the Newmans to build a fence as a reasonable accommodation under the FHAA. *Id.* at 1. The Newmans enclosed letters from their children's medical providers and a memo from the United States Department of Justice and United States Department of Housing and Urban Development regarding obligations for housing providers under the FHAA. *Id.* The letter concluded by requesting that the Association respond by January 10, 2021. *Id.* at 2. Three days later, on December 30, 2020, the Newmans emailed Burt to follow-up on the letter. Dkt. No. 26-8. Despite their formal letter request and follow-up email, the Newmans never received a response from the Association or Burt. Instead, on March 11, 2021, the Association sent a letter to all of its members, stating, among other things, that "the restrictive covenants cannot be changed and requests to go outside of the covenants will be turned down by the board as we must abide by them and do not have authority to make exceptions." Dkt. No. 34-1; Newman Decl. ¶ 25.

As a result of the Association's and Burt's failure to respond to their request, Plaintiffs initiated this lawsuit. They assert that Defendants' policy of "refusing to consider requests for reasonable accommodation and stating in advance that such requests will automatically be denied intentionally discriminates against and has a disparate impact on individuals with disabilities and their families." Compl. ¶ 34. This policy, Plaintiffs claim, has left them "unable to play outside

3

and otherwise enjoy their backyard in the same way as other Nazcr Trac residents who do not have a family member with disabilities." *Id.* at ¶ 35. Plaintiffs allege that Defendants have violated the FHAA by "imposing terms, conditions or privileges in the provision of services of facilities in connection with the Plaintiffs' dwelling because of disability" and by "refusing to make reasonable accommodation in the rules, policies, practices, or services, when such accommodations were necessary to afford Plaintiffs an equal opportunity to use and enjoy a dwelling," in violation of 42 U.S.C. §§ 3604(f)(2) and 3604(f)(3)(B). *Id.* at ¶ 37. At this stage, Plaintiffs request the Court to "preliminarily enjoin Defendants from enforcing or encouraging others to enforce on their behalf the provision in the Nazcr Trac restrictive covenants that prohibits fences." Dkt. No. 25 at 1.

## LEGAL STANDARD

"A preliminary injunction is an exercise of very far-reaching power, never to be indulged . . . except in a case clearly demanding it." *Cassell v. Snyders*, 990 F.3d 539, 544 (7th Cir. 2021) (internal quotation marks and citations omitted); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right."). A plaintiff seeking a preliminary injunction must demonstrate "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20.

## ANALYSIS

A. **Likelihood of Success on the Merits**

Plaintiffs must demonstrate that they are likely to succeed on the merits of their FHAA claim. At this stage, they "need not show that [they] will definitely win the case," or even provide proof by a preponderance of the evidence. *Ill. Republican Party v. Pritzker*, 973 F.3d 760, 763

4

(7th Cir. 2020). Instead, it requires them to demonstrate how they "propose[] to prove the key elements" of their case. *Id.* Nonetheless, this is a "significant burden." *Id.*

Under 42 U.S.C. § 3604(f)(2), it is unlawful to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap" of that person, a person residing or intending to reside in a dwelling, or any person associated with that person. Relevant here, "discrimination" includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). Also relevant here, "handicap" means "a physical or mental impairment which substantially limits one or more of such person's major life activities." 42 U.S.C. § 3602(h)(1).

As an initial matter, several items are not in dispute. First, there does not appear to be any dispute that S.N., E.N., and C.N. have a "handicap" within the meaning of the FHAA. The Defendants' decision not to dispute this allegation is reasonable because Autism is one of the enumerated mental impairments in the FHAA regulations, *see* 24 C.F.R. § 100.201(a)(2), and Plaintiffs have introduced evidence demonstrating that S.N., E.N., and C.N. have substantial limitations in caring for themselves and learning. *See* Newman Decl. ¶¶ 5–7. Second, there is no dispute that Lisa and Michael Newman have standing to seek injunctive relief. The FHAA allows an "aggrieved person" to commence a civil action in an appropriate United States district court or state court no later than two years after the occurrence or termination of an alleged discriminatory housing practice. 42 U.S.C. § 3613(a)(1)(A). An "aggrieved person" includes any person who "claims to have been injured by a discriminatory housing practice" or "believes that such person will be injured by a discriminatory housing practice that is about to occur." 42 U.S.C. § 3602(i). Lisa and Michael Newman plainly fall in either category.

5

This brings us to the heart of Plaintiffs' FHAA claim. "Enacted in 1988, the FHAA extended the scope of other federal housing laws to cover persons with disabilities." *Wis. Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 748 (7th Cir. 2006). As noted above, the FHAA requires those with disabilities be provided "accommodation in rules, policies, practices, or services when such accommodation may be necessary to afford [them] equal opportunity to use and enjoy a dwelling." *Id.* (internal quotation marks and citation omitted). "The basic elements of an FHAA accommodation claim are well-settled." *Id.* at 749. Plaintiffs must demonstrate that their requested accommodation is: "(1) reasonable, and (2) necessary, (3) to afford a handicapped person the equal opportunity to use and enjoy a dwelling." *Valencia v. City of Springfield, Ill.*, 883 F.3d 959, 967 (7th Cir. 2018) (internal quotation marks and citation omitted).

The determination of whether a requested accommodation is reasonable is a "highly fact-specific inquiry and requires balancing the needs of the parties." *Id.* at 968. "An accommodation is reasonable if it is both efficacious and proportional to the costs to implement it." *Id.* On the other hand, an accommodation is unreasonable if it "imposes undue financial or administrative burdens." *Id.* Furthermore, the Seventh Circuit has said that

> In this regard, we think it is important to note that, in undertaking this highly fact-specific assessment, it is necessary that the court take into consideration *all* of the costs to *both* parties. Some of these costs may be objective and easily ascertainable. Others may be more subjective and require that the court demonstrate a good deal of wisdom in appreciating the intangible but very real human costs associated with the disability in question.

*Wis. Cmty. Servs.*, 465 F.3d at 752 (emphasis in original). Considering these factors, the Court concludes that Plaintiffs will likely succeed in demonstrating that their requested accommodation is reasonable. In looking at costs to the parties, it is clear that *all* of the costs associated with the accommodation are carried by Plaintiffs.

First, the lack of a backyard fence undoubtedly imposes physical and mental costs on Plaintiffs. For the children, they are deprived of the opportunity to play or exercise outside in their own yard. For the parents, they suffer increased burdens of supervision when the children are outside and further burdens in securing the house to ensure that the children cannot escape through the backyard. *See* Newman Decl. ¶ 11 (noting that the Newmans have installed additional locks and cameras to prevent the children from running away). Second, Plaintiffs, through the Children's Long Term Care Medicaid Waiver Program, will be providing the funds to construct the fence. *Id.* at ¶ 8–9. And finally, as Plaintiffs point out, there will be no undue financial or administrative burden on the Association or the subdivision itself. Instead, the subdivision will contain a single fence at no financial or administrative cost to the Association. Defendants offer no argument as to why the requested accommodation is not reasonable, and as such, the Court concludes that Plaintiffs will likely succeed in demonstrating that their request is reasonable.

Next, Plaintiffs must demonstrate that the backyard fence is necessary. "Whether the requested accommodation is necessary requires a showing that the desired accommodation will affirmatively enhance a disabled plaintiff's quality of life by ameliorating the effects of the disability." *Valencia*, 883 F.3d at 968 (internal quotations and citation omitted). There is no doubt that providing a fenced outdoor space for S.N., E.N., and C.N. to play will ameliorate the effects of their disability. It will allow them to safely play and exercise outdoors in the comfort of their own backyard and it will significantly ease the burden placed upon Lisa and Michael Newman each time their children are outside. Defendant offers no argument to the contrary. Therefore, Plaintiffs are likely to succeed in demonstrating that their requested accommodation is necessary.

Finally, Plaintiffs must demonstrate that this necessity is tied to the goal of equal opportunity. "The 'equal opportunity' element limits the accommodation duty so that not every rule that creates a general inconvenience or expense to the disabled needs to be modified." *Wis.*

7

*Cmty. Servs.*, 465 F.3d at 749. Instead, the Court asks whether "the rule in question, if left unmodified, hurts 'handicapped people by reason of their handicap, rather than . . . by virtue of what they have in common with other people, such as a limited amount of money to spend on housing.'" *Id.* (quoting *Hemisphere Bldg. Co., Inc. v. Vill. Of Richton Park*, 171 F.3d 437, 440 (7th Cir. 1999)) (emphasis in original). Plaintiffs argue that the no-fence rule does just that. They assert that children without disabilities living in the Nazcr Trac subdivision can play in their backyards subject to whatever supervision their parents deem appropriate, but that S.N., E.N., and C.N. cannot, because no level of supervision can adequately ensure that they will not run away. Dkt. No. 30 at 21. In other words, for the children, "having an unfenced backyard is like not having a backyard at all." *Id.* With this understanding, Plaintiffs contend, the only way to provide the children with an equal opportunity to enjoy living in the subdivision is to allow a fence. *Id.*

Here, if left in place, the no-fence rule hurts S.N., E.N., and C.N. by virtue of their handicap, rather than by virtue of whatever they may have in common with other residents of the Nazcr Trac subdivision. It is their Autism, and the propensity to elope that results, that gives rise to the risk of harm caused by the no-fence rule. Without modification, or in this case, a reasonable accommodation, Plaintiffs will be harmed by the no-fence rule on account of their disability. Again, Defendants have offered no argument to the contrary. Therefore, the Court concludes that Plaintiffs are likely to succeed in demonstrating that the backyard fence is necessary to afford them the equal opportunity to enjoy their dwelling.

Defendants argue that Plaintiffs are not likely to succeed on the merits because the Association's board, through the Association's by-laws, has only been given power to enforce restrictive covenants, not grant exceptions to them. Dkt. No. 32 at 4; Dkt. No. 27-3 at 2 ("This association shall have powers to enforce any and all covenants, restrictions and agreements

8

applicable to the participatory parties."). Therefore, Defendants' claim, the Association is unable to grant the reasonable accommodation sought because the by-laws limit its authority to do so.

To the extent Plaintiffs' motion for preliminary injunction can be construed as requesting affirmative action by the Association, i.e., granting an exemption, the FHAA supplants any limitations placed upon the Association by its by-laws. The Association cannot fail to comply with federal law on account of a restrictive covenant and private agreements. *See, e.g.*, *Smith v. Brown*, No. C10-1021 MJP, 2010 WL 3120203, *2 (W.D. Wash. Aug. 9, 2010) ("To accept this proposition, the Court would have to find that private contracts or restrictive covenants are beyond the reach of the FHAA. This would essentially permit anyone to violate a person's rights under federal law simply by entering into a contractual agreement to do so without making the injured person a party to the contract. The law does not support this conclusion."). Furthermore, the legislative history of the FHAA makes clear that it was intended to reach restrictive covenants:

> The Act is intended to prohibit the application of special requirements through land-use regulations, restrictive covenants, and conditional or special use permits that have the effect of limiting the ability of such individuals to live in the residence of their choice in the community.

H.R.Rep. No. 100–711, at 24 (1988), *reprinted in* 1988 U.S.C.C.A.N. 2173, 2185. The Association's by-laws do not provide Defendants with carte blanche to violate federal law. *See also Gittleman v. Woodhaven Condo. Ass'n, Inc.*, 972 F. Supp. 894, 900 (D.N.J. 1997) ("The Association cannot seek to avoid liability under the FHAA by using the terms of the Master Deed as a shield. Rather, as the regulations and legislative history cited above make clear, the FHAA was clearly intended to reach and invalidate those aspects of private agreements, such as the Master Deed, that have discriminatory effects.").

Defendants attempt to distinguish this case from a host of other cases by asserting that those lawsuits were initiated *after* enforcement of the restrictive covenant was already initiated.

9

Various courts have found violations of the FHAA based on the attempted enforcement of an unlawful restrictive covenant. *See, e.g.*, *Martin v. Constance*, 843 F. Supp. 1321, 1326 (E.D. Mo. 1994) ("[T]he Court finds that under the facts of this case the attempt to enforce the covenant constituted a refusal to make a reasonable accommodation . . . A reasonable accommodation would have been not to seek enforcement of the covenant."); *Advocacy Ctr. for Persons with Disabilities, Inc. v. Woodlands Estates Ass'n Inc.*, 192 F. Supp. 2d 1344, 1350 (M.D. Fla. 2002) ("In the instant case, the Court finds that Defendant did not reasonably accommodate Plaintiffs, in violation of the FHAA, when it failed to waive the enforcement of its deed restrictions contained in the Declarations."). Defendants argue that, in those cases, it was the defendants' acts of seeking enforcement that constituted the refusal of a reasonable accommodation. Dkt. No. 32 at 7. In contrast, Defendants argue, they have not sought enforcement of the restrictive covenant in this case, but rather, have informed Plaintiffs that they are unable to provide permission for an accommodation. *Id.*

But Defendants' argument fails for two reasons. First, Plaintiffs assert that Defendants never responded to either of their requests for an accommodation. Newman Decl. ¶ 24. Although a letter was sent to all members of the Association, *see* Dkt. No. 34-1, that letter did not specifically address the Newmans' requests. As such, the mere failure to meaningfully respond to Plaintiffs' request may be enough to constitute a wrongful denial. *See Montano v. Bonnie Brae Convalescent Hosp., Inc.*, 79 F. Supp. 3d 1120, 1127–28 (C.D. Cal. 2015) ("As part of the reasonable accommodation process, defendant was required to engage in the 'interactive process' with plaintiff to discuss and explore plaintiff's requested accommodation . . . Defendant either refused or failed to respond to plaintiff's reasonable accommodation requests.") (citing *Jankowski Lee & Assoc. v. Cisneros*, 91 F.3d 891, 895 (7th Cir. 1996)).

Second, Defendants' argument is undercut by their own admission that they view their duty to enforce restrictive covenants as "mandatory." Dkt. No. 32 at 4 n.3. In their brief Defendants assert that

> The Board's power to enforce covenants does not appear to be discretionary. In the same paragraph granting the Association, through its Board, to enforce covenants, the stated of purpose of the Association is also to "insure the rights and obligations related thereto are respected." By-Laws, Art. IV. "Thereto" appears to refer to the common rights of members created by the original land development plat. The best way to give all of this language meaning is to construe the power to enforce covenants for the benefit of members as mandatory.

*Id.* In other words, Defendants are effectively admitting that they *will* seek enforcement of the restrictive covenant should Plaintiffs build their backyard fence. In their view, such enforcement is mandatory under the by-laws. Under these circumstances, Plaintiffs should not be forced to incur the expense of constructing a fence with the risk of being ordered to remove it if and when Defendants seek to enforce the restriction. It is thus irrelevant that Plaintiffs elected to file suit prior to the Association seeking enforcement. Plaintiffs' decision to seek prospective relief is thus not fatal to their claim. In sum, the Court concludes that Plaintiffs have demonstrated that they are likely to succeed on the merits of their FHAA claim.

### B. The Remaining Considerations

Having cleared the most substantial hurdle, the Court turns to the remaining considerations in determining whether to issue a preliminary injunction. Plaintiffs must demonstrate that they will suffer "irreparable harm" without injunctive relief. *Winter*, 555 U.S. at 20. A harm is "irreparable" if it "cannot be prevented or fully rectified by the final judgment after trial." *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States of America, Inc.*, 549 F.3d 1079, 1089 (7th Cir. 2008) (citing *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984)). Plaintiffs argue that each day without a fence for the children deprives them of exercise and fresh air, and further deprives them of medically necessary Medicaid-funded services. Dkt.

11

No. 30 at 7–8. Defendants to not appear to contend that the harm suffered by Plaintiffs is irreparable. *See* Dkt. No. 32 at 7 ("No one who played outside as a child could deny that children who cannot play outside are missing out on a significant life experience."). Instead, they argue that the harm is not irreparable *because of* Defendants' conduct. But this argument is misplaced because, as was described above, Defendants have indicated that they believe their authority to enforce restrictive covenants is *mandatory*. *Id.* at 4 n.3. In other words, the irreparable harm is traceable to Defendants because Plaintiffs are under the certain threat of enforcement. True, individual homeowners could also enforce the restrictive covenant, but because someone else may also enforce the covenant does not mean that it is inappropriate to enjoin Defendants from doing so. Therefore, the Court concludes that Plaintiffs have demonstrated irreparable harm.

Plaintiffs must also demonstrate that traditional legal remedies would be inadequate. *Girl Scouts*, 549 F.3d at 1086. They have done so. Traditional legal remedies, such as damages, cannot adequately compensate S.N., E.N., and C.N. for the additional days they would spend inside as a result of waiting for a final judgment. As Plaintiffs put it, "[i]n order to find there is an adequate remedy at law, it would be necessary to accept the fiction that finally building the fence only after a future trial and then giving [the children] some money will actually compensate them for additional days spent inside the house because they cannot go outside." Dkt. No. 30 at 9. Defendants argue that Plaintiffs could have requested a declaratory judgment that the no-fence restriction is unenforceable as applied to them based on legal and equitable considerations. But this would not solve the obvious problem: it would continue to keep the children locked in their home for an indeterminate period of time, thus exacerbating the already existing irreparable harm. Plaintiffs have demonstrated that traditional legal remedies are inadequate in these circumstances.

Next, the Court must move to the "balancing phase." *Cassell*, 990 F.3d at 545. Here, the Court must consider "the irreparable harm the non-moving party will suffer if preliminary relief is

12

granted, balancing that harm against the irreparable harm to the moving party if relief is denied," and the public interest, "meaning the consequences of granting or denying the injunction to non-parties." *Id.* Defendants will not suffer any irreparable harm as a result of the motion being granted. At worst, Defendants' subdivision will contain a single fence, one that is designed to keep the children of that household safe. This harm is not irreparable because, should Plaintiffs ultimately fail on the merits, the fence will be removed at Plaintiffs' expense. Dkt. No. 30 at 22. Furthermore, even if Plaintiffs do prevail, the fence can be removed when the children no longer live there or if treatment is successful in addressing their elopement issues. *See id.* at 19. Any harm suffered by Defendants will not be irreparable, and furthermore, does not outweigh the irreparable harm being suffered by Plaintiffs.

As for the public interest, there is no serious concern involved. The relevant non-parties to this injunction are the other homeowners in the Nazcr Trac subdivision. As mentioned above, at worst, their concern is limited to the existence of a single fence in the neighborhood. Although it is possible, but not a stated concern, that the fence could be an "eyesore" to some, that is not a sufficient reason to deny the motion, especially in light of the fact that Plaintiffs have demonstrated a strong likelihood of success on the merits. *See Valencia*, 883 F.3d at 966 ("[T]he more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor."). Therefore, the public interest does not weigh against granting the motion.

Finally, Federal Rule of Civil Procedure 65(c) requires that the movant for a preliminary injunction "give[] security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." But where the Court is "satisfied that there's no danger that the opposing party will incur any damages from the injunction," the Court may waive the bond requirement. *Habitat Educ. Ctr. v. U.S. Forest Serv.*, 607 F.3d 453, 458 (7th Cir. 2010). Here, Defendants will not incur any damages as a result

of the preliminary injunction being granted. Indeed, all costs associated with the installation, and if necessary, removal, of the fence will be borne by Plaintiffs. Dkt. No. 30 at 23. As such, the Court finds it appropriate to waive the bond requirement in this case.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for preliminary injunction (Dkt. No. 25) is **GRANTED**. Defendants are preliminarily enjoined from enforcing or encouraging others to enforce on their behalf the provision in the Nazcr Trac restrictive covenants that prohibits fences. The Clerk is directed to set this matter for a telephone conference to discuss further proceedings.

**SO ORDERED** at Green Bay, Wisconsin this 3rd day of May, 2022.

s/ William C. Griesbach<br>
William C. Griesbach<br>
United States District Judge